UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ALRELIO EVANS,

                    Plaintiff,                                  Case No. 2:12-cv-135

v.                                                              Honorable R. Allan Edgar

GARY CAPELLO et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Capello, Larson, Jondreau, Delene, Frechen, Cummings, Etelamaki and Ruostala. The Court will serve the complaint against Defendants Hoover, Perry, Loveless and Smith.

## Discussion

I.     Factual allegations

Plaintiff presently is incarcerated at the Ionia Maximum Correctional Facility but complains of events that occurred at the Baraga Maximum Correctional Facility (AMF).  In his *pro se* complaint, he sues Warden Gary Capello, Deputy Warden Unknown Larson, Assistant Deputy Warden Unknown Jondreau, Inspector Craig Smith, Resident Unit Manager Unknown Delene, Sergeants John Perry and Unknown Frechen, Corrections Officers Unknown Hoover, James Loveless, Unknown Cummings, Unknown Etelamaki and Unknown Ruostala.

On August 21, 2010, Plaintiff alleges that Officer Hoover yelled in his ear on his way to the dining hall.  When Plaintiff ignored Hoover, Hoover called Plaintiff a "[b]_tch" and demanded a shake down.  (Compl., docket #1-1, Page ID#13.)  During the shake down, Hoover grabbed Plaintiff's chest in an aggressive manner and stuck his hand in Plaintiff's back pocket.  Sergeant Perry witnessed Hoover's action but did not do anything to stop it.  Plaintiff also claims that Inspector Smith viewed the video of the shake down but submitted a false report to cover up for his co-workers.

On August 23, 2010, Plaintiff claims that Officer Hoover rubbed Plaintiff's penis while conducting a pat-down of Plaintiff.  Sergeant Perry watched and laughed.  Perry told Plaintiff to "come over here so I can beat your a_s."  (Compl., docket#1-1, Page ID#13.)  Perry also threatened to retaliate against Plaintiff if Plaintiff did not stop filing complaints about other officers. Plaintiff informed Defendants Capello, Larson, Smith, Jondreau and Delene of Hoover and Perry's actions to no avail.

-2-

On August 21, 2010, Plaintiff noticed odd markings around his toilet and sink after returning from lunch. Another prisoner informed Plaintiff that Officer Loveless had entered his cell. Plaintiff told Sergeants Frechen and Perry about the situation but they did not believe Plaintiff. Instead of going to supper, Plaintiff returned to his cell. While in his cell, Plaintiff heard Officer Loveless admit to Sergeant Perry that he put pepper spray on Plaintiff's sink and toilet.

On November 3, 2010, Plaintiff complains that Officer Cummings refused to give him a lunch tray.

On November 11, 2010, Plaintiff states that Officers Etelamaki and Cummings came to Plaintiff's cell to escort him for a religious visit. Officer Cummings opened the food slot and started to hand cuff Plaintiff's right wrist while slowly brushing the back of Plaintiff's hand. Plaintiff told Cummings that it was not necessary to rub his hand to apply the hand cuffs. Officer Etelamaki then told Cummings to remove the hand cuffs. Etelamaki directed Plaintiff to keep his mouth shut. Plaintiff replied that he was not a homosexual and did not enjoy those advances. Officers Etelamaki and Cummings refused to permit Plaintiff to go to his religious visit. Plaintiff subsequently received a "fraudulent" major misconduct ticket for calling Cummings a homosexual. (Compl., docket #1-1, Page ID#14.) Plaintiff was eventually convicted of the misconduct charge of insolence. He appealed the misconduct conviction but Deputy Larson denied his appeal.

On November 27, 2010, Plaintiff complains that Officer Cummings threatened to starve Plaintiff because of Plaintiff's religious beliefs and mental illness.

In summary, Plaintiff claims that Defendants Hoover, Perry, Smith, Loveless and Cummings violated his Eighth Amendment rights in several ways. Plaintiff also alleges that Defendants Etelamaki and Cummings violated his First Amendment rights by refusing to allow

Plaintiff to attend a religious visit. Plaintiff further claims that Defendant Perry retaliated by threatening to harm Plaintiff after Plaintiff filed complaints against Perry's co-workers. For Plaintiff's November 11, 2010 misconduct ticket, the Court construes due process claims against Defendants Cummings and Larson. *See Haines*, 404 U.S. at 520.

Plaintiff requests declaratory relief and monetary damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal*

-4-

plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **Lack of Factual Allegations**

Beyond naming him as a Defendant, Plaintiff does not provide any allegations against Defendant Ruostala in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th

Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendant Ruostala.

      B.    **Supervisory Liability**

      Plaintiff fails to make specific factual allegations against Defendants Capello, Jondreau, Delene and Frechen, other than Plaintiff's claim that they failed to respond to his complaints regarding Defendants Perry and Hoover. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Capello, Jondreau, Delene and Frechen engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

C.    **Eighth Amendment**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

1.    **Defendants Perry, Hoover, Smith and Loveless**

As an initial matter, the Court finds that Plaintiff's Eighth Amendment claims against Defendants Perry, Hoover, Smith and Loveless are sufficient to state a claim.

2.    **Defendant Cummings**

Plaintiff argues that Defendant Cummings violated his Eighth Amendment rights by refusing to give Plaintiff a lunch tray, threatening to starve Plaintiff and inappropriately touching Plaintiff's wrist.

Plaintiff first states that Defendant Cummings refused to give Plaintiff a lunch tray on November 3, 2010. One instance of missing a food tray does not rise to an Eighth Amendment claim. *See Miller v. Wertanen,* 109 F. App'x 64, 65 (6th Cir. 2004) (one instance of the deprivation of books, linens, food trays and mail does not violate the Eighth Amendment). Moreover, allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). *But see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim). Plaintiff therefore fails to state a claim for the lack of a food tray on one occasion.

Plaintiff next argues that Officer Cummings threatened to starve Plaintiff on November 27, 2010. Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse

-8-

do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Cummings arising from his alleged verbal abuse.

Finally, Plaintiff alleges that Defendant Cummings inappropriately touched Plaintiff's wrist while placing handcuffs on his wrists. Not "every malevolent touch by a prison guard gives rise to a[n Eighth Amendment] cause of action." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir.1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore

prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson*, 503 U.S. at 8).

Sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Zander v. McGinnis*, No. 97–1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim).  Even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99–1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859–61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand,

touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

In this case, Plaintiff alleges that Officer Cummings rubbed Plaintiff's wrist in a sexual manner while placing handcuffs on Plaintiff's wrists. First, Officer Cummings had to touch the back of Plaintiff's hand to place the handcuffs on Plaintiff's wrists. Even if the touching of Plaintiff's wrist by Officer Cummings was sexual, it was a minor, isolated incident. Minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See Reynolds v. Warzak,* No. 2:09-cv-144, 2011 WL 4005477, at **6-8 (W.D. Mich. Sept. 8, 2011) (finding that an officer grabbing a plaintiff's butt cheeks and spreading them apart, while asking "[h]ow's that feel you little bitch?" did not state an Eighth Amendment claim even when the plaintiff stated that the officer rubbed his chest, legs, and inner and outer thighs in a sexual manner during a pat down search on a later date). Plaintiff does not even allege that Officer Cummings coupled his questionable touching with any offensive sexual remarks. Moreover, Plaintiff does not suggest that he experienced any physical or emotional injury whatsoever as a result of the touching.[1] Therefore, Plaintiff's allegations of sexual harassment against Officer Cummings fail to state an Eighth Amendment claim.

### D.     **Due Process Clause - Major Misconduct**

Plaintiff claims that Officer Cummings wrote a false major misconduct ticket against him. After he was convicted of the misconduct, Plaintiff states that Deputy Warden Larson wrongly

---

[1]Absent physical injury, a plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id. See also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *1 (6th Cir. June 7, 2001); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000). Plaintiff alleges no physical injury. As a consequence, any claim for emotional damages is barred.

denied his appeal.[2]  A prisoner's ability to challenge a prison misconduct conviction depends on

whether the conviction implicated any liberty interest.  In the seminal case in this area, *Wolff v.*

*McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that

prison officials must follow before depriving a prisoner of good-time credits on account of alleged

misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison

disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of

liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for
> satisfactory behavior while in prison.  But here the State itself has not only provided
> a statutory right to good time but also specifies that it is to be forfeited only for
> serious misbehavior.  Nebraska may have the authority to create, or not, a right to a
> shortened prison sentence through the accumulation of credits for good behavior, and
> it is true that the Due Process Clause does not require a hearing "in every conceivable
> case of government impairment of private interest."  But the State having created the
> right to good time and itself recognizing that its deprivation is a sanction authorized
> for major misconduct, the prisoner's interest has real substance and is sufficiently
> embraced within Fourteenth Amendment "liberty" to entitle him to those minimum
> procedures appropriate under the circumstances and required by the Due Process
> Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct conviction resulted in any loss of

good-time credits, nor could he.  The Sixth Circuit has examined Michigan statutory law, as it relates

to the creation and forfeiture of disciplinary credits[3] for prisoners convicted for crimes occurring

after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss

---

[2]Plaintiff also argues that Defendant Larson did not respond to his complaints regarding Defendants Perry and Hoover.  As discussed in Section II(B), government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 129 S. Ct. at 1948; *Monell*, 436 U.S. at 691; *Everson,* 556 F.3d at 495. Therefore, Plaintiff fails to state a claim for Defendant Larson's failure to act.

[3]For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

of disciplinary credits does not necessarily affect the duration of a prisoner's sentence.  Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011).  In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff has not identified any deprivation, much less a significant and atypical deprivation, arising from his conviction.  Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails.  *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).  Accordingly, Plaintiff's due process claim fails.

E.     **First Amendment - Religion**

Plaintiff alleges that his First Amendment rights were violated by Defendants Etelamaki and Cummings because he was denied one religious visit.  In his complaint, Plaintiff states that he is a Messianic Jew.  (Compl., docket #1-1, Page ID#14.)  While "lawful incarceration

-13-

brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

-14-

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

Plaintiff cannot show that Defendants Etelamaki and Cummings' behavior infringed upon his First Amendment rights. In his complaint, Plaintiff states that he is a Messianic Jew. However, Plaintiff does not allege that his religious beliefs are sincerely held or indicate how the lack of one visit infringed upon his sincerely held religious beliefs. Even if Plaintiff's First Amendment rights had been violated, Defendants Etelamaki and Cummings' decision to deny Plaintiff his religious visit was reasonably related to legitimate penological interests. Prison officials have a clear legitimate penological interest in maintaining order in the prison facility. *See Bell v. Wolfish,* 441 U.S. 520, 546-47 (1979). Clearly, referring to Defendant Cummings as a homosexual can adversely affect the order of the prison facility. Consequently, the first *Turner* factor is satisfied.

-15-

The other three *Turner* factors also support the denial of a religious visit. Accordingly, Plaintiff fails to state a claim for a violation of his First Amendment rights.

F.     **First Amendment - Retaliation**

Plaintiff alleges that Defendant Perry retaliated by threatening to harm Plaintiff after Plaintiff filed complaints against Perry's co-workers. The Court finds that Plaintiff's First Amendment retaliation claim against Defendant Perry is sufficient to state a claim.

G.     **Summary of Service**

At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendants Perry, Hoover, Smith and Loveless, and a First Amendment retaliation claim against Defendant Perry. Accordingly, the Court will order service of the complaint against them.

<u>**Conclusion**</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Capello, Larson, Jondreau, Delene, Frechen, Cummings, Etelamaki and Ruostala will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Hoover, Perry, Loveless and Smith.

An Order consistent with this Opinion will be entered.


Dated:  _____5/8/2012_____          _____*/s/ R. Allan Edgar*_____
                                          R. Allan Edgar
                                          United States District Judge